## GFI WESTMINSTER SQUARE, LLC

v.

### A. David TAMMELLEO.

No. 2002–343–Appeal.

Supreme Court of Rhode Island.

May 23, 2003.

Kelley Morris.

David Tammelleo.

## ORDER

A commercial tenant, holding over on a month-to-month basis after the expiration of the term in its written lease, appeals from a Superior Court judgment in favor of the plaintiff-landlord, GFI Westminster Square, LLC (landlord), in this action to recover past-due rent. The defendant-tenant, lawyer A. David Tammelleo (tenant), contends that he did not owe any additional rent because the written lease did not allow for a 100 percent rent increase until after the landlord sent him a termination notice for the holdover month-to-month tenancy.

The parties dispute the interpretation of the lease with respect to the amount of rent owed when, as here, tenant held over beyond the lease term. On January 1, 1991, tenant entered into a five-year lease of premises located at 10 Dorrance Street, Suite 500, in Providence. He used the premises for his law offices. Thereafter, he exercised an option to renew the lease through December 31, 2000. In 2000 and 2001 he negotiated with landlord to try to obtain a new lease. When the old lease expired on December 31, 2000, tenant remained on at the premises as a month-to-month tenant without having obtained a new lease.

According to tenant, landlord charged him a monthly rent of $2,737 for the period from January through October 2001. This amount apparently reflected the amount of rent charged for the last month of the written lease plus certain additional charges. Thereafter, on August 23, 2001,

landlord sent tenant a letter notifying him that it would be implementing an increase in his rent pursuant to the holding-over provision of the lease. The letter asked tenant to contact a representative of landlord to avoid incurring holdover penalties. On October 22, 2001, landlord notified tenant that the rent he would owe for the month of November and any succeeding months that he stayed on as a tenant would be charged at a 100 percent increase over his previous monthly payments.[1] Again, landlord urged tenant to contact one of its representatives "to remedy the situation prior to incurring any holdover penalties." According to landlord, tenant did not vacate the premises or pay the 100 percent increase for the months of November 2001 through March 2002. In February 2002, landlord ordered tenant to vacate the premises by April 1, 2002. The tenant complied with this request.

In February 2002, landlord filed this action in District Court to recover alleged past-due rent. That court found in favor of landlord in the amount of $15,426.25. The tenant, however, appealed the District Court judgment to the Superior Court for a *de novo* trial. A nonjury trial yielded a bench decision in which the presiding magistrate found in favor of landlord for back rent owed for the months of November 2001 through March 2002. The magistrate granted landlord a total award of approximately $18,000, which included costs, parking fees, attorney's fees, and interest in addition to back rent. The tenant appealed, and we ordered the parties to show

---

1. During oral argument of this appeal, tenant suggested that landlord had sent him a bill for the rent due for November 2001 that did not include the 100 percent rental increase that landlord said (in its October 22 letter) would begin with the November rent. The record, however, does not contain the alleged bill for the November rent. In any event, even according to tenant, he received the October 22 letter containing the demand for the 100 percent increase in the rent beginning on November 1 *after* he had received the previous bill from landlord for the November rent. Thus, the later October 22 communication from landlord clearly communicated that the rent would go up in November as per the lease.

cause why we should not resolve the appeal summarily. Because they have not done so, we proceed to decide the appeal at this time.

Based on our review of the pertinent language in the lease, tenant's arguments on appeal are not persuasive. Paragraph 32 of the lease between the parties reads in pertinent part:

> "If for any reason Tenant retains possession of the Premises or any part thereof after the termination of the term of this Lease or any extension of the term, unless other written arrangements are made with Landlord, such holding over shall constitute a tenancy from month to month, terminable by either party upon thirty (30) days prior written notice to the other party, and Tenant shall pay Landlord monthly rental during the month to month tenancy computed at the rate of rent payable hereunder for the final month of the last year of the term prior to such holding over plus one hundred (100%) percent of said rent. The month to month tenancy shall otherwise be on the same terms and conditions as set forth in this Lease, as far as applicable."

Under these provisions, landlord clearly possessed the authority to increase the rent by 100 percent during any holding over by tenant after the end of the lease term. Although landlord may not have implemented such a rent increase until the eleventh month of tenant's month-to-month holdover tenancy, it nevertheless retained the ability to do so pursuant to the above-quoted provisions in the lease. "Where a provision of a lease is unambiguous, there is generally no room for interpretation or judicial construction." *Harbor Marine Corp. v. Briehler,* 459 A.2d 489, 491 (R.I.1983). The unambiguous terms of this lease required that tenant holding over on a month-to-month basis "shall pay" to landlord a monthly rental computed by adding together the rent for the final month of the lease "plus one hundred (100%) percent of said rent."

Thus, it does not appear to us that the lease required the landlord to terminate the tenant's month-to-month tenancy before it could increase the tenant's rent by 100 percent. And even though the tenant benefited from the landlord's failure to implement the rent increase from January through October of 2001, the tenant lacked any legal basis to complain about or to refuse payment at the increased rental rate specified in the lease when he continued to hold over after November 1.

For this reason, we deny the appeal and affirm the judgment.